## DOWNES v. THE EXCELSIOR.

*(Circuit Court, S. D. New York.* October 10, 1889.)

**1. COLLISION—STEAMER AND CANAL-BOAT—EVIDENCE.**
Where the testimony is conflicting and irreconcilable as to whether a steamer which collided with a canal-boat moved from her berth in her own water, or allowed her stern to swing so far from the pier as to cause the collision, the conclusion of the district judge, who saw and heard the witnesses, will be accepted by the circuit court.

**2. SAME—DUTY OF STEAMER.**
If a steamer at a pier in a slip is so situated that she cannot haul out under her own power, even with the exercise of due care, without swinging outside of the open water, through which she undertakes to maneuver, she is liable for a collision with a canal-boat resulting from the swinging of her stern outside of her own berth.

**3. SAME—DUTY OF CANAL-BOAT.**
When a canal-boat is cast off from a steamer in a slip, and from all connection with the lower pier, and is made fast to boats which are themselves fastened to the upper pier, the boat thus forming the outermost of a tier which reached more than half-way across the slip, and within four feet of a steamer, it is the captain's duty, when he knows that the steamer is about to start, to seek some other place within the slip, or to betake himself elsewhere, and, if necessary, to ask assistance therefor.

In Admiralty. Libel for damages. On appeal from district court.
*Hyland & Zabriskie*, for Downes.
*Chas. H. Tweed* and *R. D. Benedict*, for the Excelsior.

LACOMBE, J. As to the steamer. The controlling question is whether or not she moved out from her berth in her own water, or allowed her stern to swing so far off from the pier as to bring her propeller into collision with the canal-boat. Upon this point the evidence is conflicting; witnesses for the steamer insisting that she did not swing off, and witnesses for the canal-boat claiming, with equal positiveness, that she did. The evidence is irreconcilable; one side or the other has misconceived, misremembered, or misstated the facts. In such circumstances the conclusion reached by the district judge, who saw and heard the witnesses,

and has thus had the opportunity of observing their demeanor under examination, will be accepted. He found that there was a change of the Excelsior's stern, caused by its movement outward from the dock, and that the collision occurred in consequence of such movement. If this movement was caused by any carelessness on the part of those controlling the steamer's motions, she is of course to be held liable. If the situation at the time she started was such that, even with the exercise of due care, she could not haul out under her own power without swinging outside of the open water, through which she undertook to maneuver, she should not have undertaken such maneuver in so contracted a space.

As to the canal-boat. The testimony is conflicting as to the number of boats and their respective positions in the slip at the time the Excelsior started out. The fact, however, which seems undisputed, that immediately after the collision an effort was made to haul the Fowles over towards the dock on the upper side of the slip, indicates that there was a place within the slip more remote from the Excelsior which the captain of the canal-boat might have sought before the steamer started. If, when he was cast off from the steamer, and from all connection with the lower pier, he made fast to boats which were themselves fastened to the upper pier, his boat thus forming the outermost of a tier which reached from its dock more than half-way across the slip, and as close to the Excelsior as he claims, (four feet,) it was clearly his duty, when he knew the Excelsior was about to start, to seek some other place within the slip, or to betake himself elsewhere. If he could not move his boat without assistance, it was his duty at least to ask for it; and even this he did not do.

The decree of the district court is affirmed, but, as both sides have appealed, without costs.